James D. Curran, Esq.,  SBN 126586
jcurran@wolkincurran.com
Shashauna Szczechowicz, Esq., SBN 249102
sszczechowicz@wolkincurran.com
WOLKIN·CURRAN, LLP
555 Montgomery Street, Suite 1100
San Francisco, California  94111
Telephone:   (415) 982-9390
Facsimile:   (415) 982-4328

Attorneys for Plaintiff
THE GRAY INSURANCE COMPANY

FILED
2013 SEP 11  PM 3:38
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
SANTA ANA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THE GRAY INSURANCE COMPANY, a Louisiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>LECTRFY, INC., a California corporation; ROBERT C. ARMIJO, an individual; THE ROBERT C. ARMIJO LIVING TRUST, a California trust; ROBERT C. ARMIJO, as Trustee for The Robert C. Armijo Living Trust,<br><br>Defendants. | Case No. SACV13 - 01411 DOC (ANx)<br><br>**COMPLAINT OF PLAINTIFF THE GRAY INSURANCE COMPANY FOR:**<br><br>**(1)  Breach of Written Indemnity Agreement;**<br><br>**(2)  Specific Performance;**<br><br>**(3)  Injunctive Relief; and**<br><br>**(4)  *Quia Timet*** |

Plaintiff THE GRAY INSURANCE COMPANY ("**Gray**") alleges as its Complaint against Defendants as follows:

### FEDERAL JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because there is complete diversity of citizenship between Gray and Defendants, and the amount in controversy exceeds $75,000.

1.

COMPLAINT OF THE GRAY INSURANCE COMPANY

2.      Venue is proper in the Central District of California, because a substantial part of the events and omissions giving rise to Gray's claims occurred in Los Angeles County, California.

## PARTIES

3.      Gray is a corporation organized, incorporated and existing under the laws of the State of Louisiana, with its principal place of business in Metairie, Louisiana.  Gray is, and at all times mentioned herein was, qualified and authorized to transact business as a surety in the State of California.

4.      Gray is informed and believes, and thereon alleges, that Defendant LECTRFY, INC., ("**Lectrfy**") is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Orange, California.

5.      Gray is informed and believes, and thereon alleges, that Defendant ROBERT C. ARMIJO ("**Robert Armijo**") is, and at all times mentioned herein was, an individual residing in Orange, California, and an officer and/or director of Lectrfy.

6.      Gray is informed and believes, and thereon alleges, that Defendant THE ROBERT C. ARMIJO LIVING TRUST (the "**Trust**"), by and through its Trustee, ROBERT C. ARMIJO, is, and at all times mentioned herein was, is a trust created and operated under the laws of the State of California.

7.      Gray is informed and believes, and thereon alleges, that Defendant ROBERT C. ARMIJO, as Trustee for The Robert C. Armijo Living Trust ("**Trustee**"), is, and at all times mentioned herein was, an individual residing in Orange, California.

8.      The true names and capacities of the fictitiously named Defendants DOES 1 through 50 are unknown to Gray at this time.  Gray will, with leave of Court, amend this Complaint to set forth the true names and capacities of such fictitiously named Defendants when they are ascertained.

2.

1  Each of the fictitiously named Defendants is responsible in some manner for
2  the acts, occurrences and damages hereinafter alleged.

3        9.    As used herein, the term "Defendants" shall include, jointly and
4  severally, each of the named defendants.

5        10.    Gray is informed and believes, and thereon alleges, that at all
6  times mentioned in this complaint, each of Defendants was the agent, servant,
7  employee, representative, subsidiary, affiliate, partner, member, or associate of
8  one or more of the other Defendants, and all of the things alleged to have been
9  done by Defendants were done in the course and scope of that relationship and
10  with the knowledge and consent of their principals, employers, owners,
11  superiors, affiliates, masters, parent corporations, partners, members,
12  associates, or representatives, except as is otherwise specifically alleged within
13  this Complaint.

## **GENERAL ALLEGATIONS**

15        11.    Defendants entered into a certain General Indemnity Agreement
16  dated November 29, 2011 ("**Indemnity Agreement**"), as consideration for
17  Gray issuing surety bonds on behalf of Lectrfy.  A true and correct copy of the
18  Indemnity Agreement is attached hereto as **Exhibit 1**.

19        12.    The terms of the Indemnity Agreement are incorporated herein by
20  this reference as though fully set forth.  The Indemnity Agreement includes,
21  but is not limited to, the following terms and provisions:

22      **1.**    **Definitions**:   For purposes of this Agreement, the terms
23  below shall be defined as follows:
    a.  Agreement - This General Indemnity Agreement.
24      b.  Bonds -Any and all contracts of suretyship, guarantees,
25         obligations and undertakings.
    c.  Indemnitors - One or more of the undersigned, and their
26         respective  heirs,  successors,  assigns,  co-venturers,
27         parents, affiliates, divisions and subsidiaries, where now
28         existing or hereafter acquired or created.

3.

d. Surety - The Gray Casualty & Surety Company, The Gray Insurance Company, any of their present or future direct or indirect parent companies, any of their respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns.

e. Principal -A person or entity in whose name a Bond is issued.

f. Contract -Any contract or obligation, the performance of which is guaranteed or covered either in whole or in part under a Bond.

g. Loss - All loss and expense of any kind or nature, including attorneys' and other professionals' fees, which Surety incurs in connection with any Bond or this Agreement including, but not limited to, all loss and expense incurred by reason of Surety's: (i) making any investigation in connection with any Bond; (ii) prosecuting or defending any action in connection with any Bond; (iii) obtaining the release of any Bond; (iv) recovering or attempting to recover collateral or security in connection with any Bond or this Agreement; (v) enforcing by litigation or otherwise, any of the provisions of this Agreement; (vi) all interest accruing thereon at the maximum legal rate; (vii) any funds advanced to the Principal for any reason, including, but not limited to, the completion of any Contract or contract or for operating expenses of the Principal.

h. Default: An Indemnitor shall be deemed in default under this Agreement in the event that it:

   i. Is declared to be in default by the Obligee of any Bond;

   ii. Abandons, forfeits or breaches, or fails, refuses or is unable to perform a Contract;

   iii. Fails, refuses or is unable to pay any bill or satisfy any debt incurred in connection with the performance of any obligation guaranteed by the Bond;

   iv. Becomes the subject of any agreement or proceeding of liquidation or receivership, actually becomes insolvent, or requests financial assistance from the Surety;

4.

     v. Dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;

    vi. Breaches or fails to perform or comply with any provision of this Agreement.

**2.** **<u>Indemnity/Exoneration</u>**: The Indemnitors jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all Loss, liability, damages and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which the Surety may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with any of the covenants and conditions of this Agreement, or the failure of the Indemnitors to discharge any obligations under this Agreement; (c) in enforcing any of the terms, covenants or conditions of this Agreement; or (d) in pursuing reimbursement for any Loss incurred hereunder.

Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore.  The amount of such payment to the Surety by the Indemnitors shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Indemnitors.

The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement.

///

COMPLAINT OF THE GRAY INSURANCE COMPANY

The Surety shall have no obligation to invert or to provide a return on the payment or any other collateral deposited with the Surety. The Indemnitors shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Indemnitors at the addresses of the Indemnitors last known to the Surety, regardless of whether such demand is actually received.

The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety the sum demanded by the Surety as payment, immediately upon demand, shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement, including the obligation to pay to the Surety the sum demanded, and hereby waive any claims or defenses to the contrary.

In the event of payment of any kind by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity, or expediency existed. An itemized statement by an employee of such Surety, or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

///

///

6.

3. **Assignment**:   The Indemnitors, hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Indemnitors to the Surety, whether heretofore or hereafter incurred:

a. All the rights of the Indemnitors in, and growing in any manner out of, the Bonds or any Contracts referred to in the Bonds;

b. All the rights, title and interest of the Indemnitors in and to all machinery, equipment, vehicles, plant, tools and materials that are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all Contract referred to in the Bonds or elsewhere, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

c. All the rights, title and interest of the Indemnitors in and to all surety bonds supporting such Contracts;

d. All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever that the Indemnitors may have or acquire against any party, including, but not limited to, owners, obligees, subcontractors, laborers or materialmen, architects, engineers, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or including, but not limited to, prime contractors, subcontractors, laborers, or materialmen;

e. Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all Contracts in which the Indemnitors have an interest;

f. Any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, and general intangibles;

7.

g.   Any and all policies of insurance.

The Surety shall not be liable for decrease in value, loss, destruction or damage to such collateral, however caused. These assignments shall become effective retroactive to the date of the first Bond, but only in the event of any of the following:

a.   any abandonment, forfeiture or breach or alleged breach of any Contracts or of any breach or alleged breach of any Bonds;

b.   of any breach or alleged breach of the provisions of any of the paragraphs of this Agreement;

c.   of a default or alleged default in discharging such other indebtedness or liabilities when due;

d.   of any assignment by the Indemnitors for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or trustee for the Indemnitors whether insolvent or not;

e.   of any proceeding that deprives the Indemnitors of the use of any of the machinery, equipment, plant, tools or materials referred to in section (b) of the preceding paragraph;

f.   of the Indemnitor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if the Indemnitor be an individual.

In the event these assignments become operative, the Indemnitors authorize the Surety, at its sole discretion and to the extent it deems appropriate, but without any obligation on its part, to assert and pursue all of the assigned, transferred or conveyed rights, actions, causes of action, claims and/or demands and to take possession of all or part of the work plus all associated supplies, tools, plant, machinery, equipment, materials, records, drawings and plans, and to arrange for the completion of such work, or to relet, or consent to the reletting or completion of, any Contract.

///
///
///

8.

COMPLAINT OF THE GRAY INSURANCE COMPANY

**4.** __Security Interest__: This Agreement constitutes a security agreement to or with the Surety and also a financing statement enforceable under the Uniform Commercial Code ("UCC") and all similar statutes now or hereafter in force in any jurisdiction.  The Indemnitors hereby consent to the Surety perfecting its rights hereunder as it deems necessary or prudent without providing Indemnitors with any further notice and without seeking any additional consent from the Indemnitors.  Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a financing statement under the UCC, and the Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a financing statement or the filing of a financing statement based upon this Agreement as a security agreement in such states, counties/parishes and other places as the Surety shall deem necessary or prudent.

The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.  The Surety's filing of the UCC statement shall not in any way abrogate, restrict or limit the rights of Surety under this Agreement or under law or in equity.

**5.** __Collateral Security__: On demand by Surety, the Indemnitors will pay Surety an amount Surety deems necessary to protect itself from all Loss or expenses as soon as Surety determines that liability exists or has reasonable basis to believe that it may incur liability, whether or not Surety has made any payment or created any reserve.  Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or bonded Contract funds that Indemnitors diverted in violation of Paragraph 9 of this Agreement and/or to establish a trust account in accordance with Paragraph 9.  Surety shall have no duty to invest, or to provide interest on, any such deposit.

Surety shall have the right to use the collateral, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors are or

9.

COMPLAINT OF THE GRAY INSURANCE COMPANY

would be obligated to indemnify Surety under the terms of this Agreement. The liability of the Principal and Indemnitors hereunder shall not be affected by the return or exchange of any collateral that may have been obtained.

Surety may release, sell or realize upon any or all such collateral security, at public or private sale, in its absolute discretion with or without notice to the Indemnitors, or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Indemnitors only for such surplus or remainder of such collateral security or the proceeds thereof as may be in Surety's possession after it has been fully indemnified and made whole under this Agreement, the common law, and all other agreements among Surety and the Indemnitors. Surety shall not be liable for decrease in value, release of, loss or destruction of, or damage to such collateral, however caused.

The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Surety, immediately upon demand, the sum demanded by Surety as collateral security shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Therefore, the Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

* * *

9.   **Trust Fund**:  The Indemnitors covenant and agree that the entire contract price of any Contract, whether in the possession of the Principal, Indemnitors, obligee or another, shall be and hereby are impressed with a trust ("Trust Funds") in favor of Surety, and said Trust Funds are to be used to pay all laborers, materialmen, suppliers and subcontractors furnishing labor, material and services in the performance of the Contract for which Surety would be liable and to also be used to satisfy the conditions of the Bond executed in connection with the Contract. The Trust Funds shall inure to the benefit of Surety for any liability,

10.

COMPLAINT OF THE GRAY INSURANCE COMPANY

Loss, cost, or expense which Surety may have or sustain under any Bond.

Upon notification by the Surety and in further implementation of the trust or trusts hereby created, Principal and Indemnitors agree to the Surety's appointment of an escrow agent or disbursing servicer to manage the trust payments, or to the opening of a trust account with a bank acceptable to the Surety.  Should a trust account be opened, withdrawals from the trust account shall be by check or similar instrument signed by the Principal and countersigned by a representative of the Surety.  Said trust or trusts shall terminate upon the payment by the Principal or Indemnitors of all of the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of twenty (20) years from the date hereof, whichever shall first occur.

\* \* \*

12. **Claim Settlement**:  Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, regardless of whether liability exists, and its determination shall be final, binding and conclusive upon the Indemnitors. The Surety shall have no obligation to tender its defense to any Indemnitor.  If the Surety elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to Surety for any and all Loss, costs, damages, interest and expenses, including but not limited to attorneys' fees and professionals' fees resulting from the Surety's investigation and/or defense.  Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

Indemnity Agreement, **Exhibit 1**.

13.    Gray is informed and believes, and thereon alleges, that at times following execution of the Indemnity Agreement, Lectrfy entered into various construction subcontracts.

11.

14.     Gray is informed and believes, and thereon alleges, that the various construction subcontracts required, *inter alia*, that Lectrfy furnish the respective general contractors with a performance bond and/or a labor and materials payment bond in amounts specified in the respective subcontract documents.

15.     At the requests of Defendants, Gray issued various performance bonds and payment bonds on behalf of Lectrfy, including but not limited to:

| **Bond No.** | **Project** |
| --- | --- |
| Subcontract Performance Bond Form A, Bond No. **GSM27941** | UCLA – Dentistry 73006-52 Oral Cancer Center (the "School of Dentistry Project") |
| Subcontract Labor and Material Payment Bond, Bond No. **GSM27941** | |
| Subcontract Performance Bond Form A, Bond No. **GSM27942** Subcontract Labor and Material Payment Bond, Bond No. **GSM27942** | UCLA Telemedicine & Prime Facilities, Phase 2 700 WW Plaza A Level (the "Telemedicine Project") |
| Subcontract Performance Bond Form A, Bond No. **GSM27943** Subcontract Labor and Material Payment Bond, Bond No. **GSM27943** | Aquatic Center Classroom Bldg. Diamond Bar High School; NCI Project No. 2119 (the "Diamond Bar Project") |

Subcontract Performance Bond Form A, Bond No. **GSM27941**; Subcontract Labor and Material Payment Bond, Bond No. **GSM27941**; Subcontract Performance Bond Form A, Bond No. **GSM27942**; Subcontract Labor and Material Payment Bond, Bond No. **GSM27942**; Subcontract Performance Bond Form A, Bond No. **GSM27943**; and Subcontract Labor and Material Payment Bond, Bond No. **GSM27943** are collectively referred to as the "**Bonds**."

///

///

12.

16.    It is alleged by various obligees and claimants that Lectrfy defaulted on certain performance and payment obligations on the School of Dentistry Project, the Telemedicine Project and the Diamond Bar Project, and that said obligations fall within Gray's obligations under the Bonds.

17.    As a result of the alleged defaults of Lectrfy, to date Gray incurred $353,648.10 in losses, costs and expenses due to the investigation, defense and satisfaction of claims against the Bonds.

18.    Gray anticipates that it will incur losses, costs, and expenses in connection with additional claims on the Bonds.

19.    When the full amount Gray is required to pay under and as a result of the Bonds is known, Gray will seek leave to amend this complaint to state a claim for damages in such amount.

## FIRST CAUSE OF ACTION - Breach of Indemnity Agreement
### (Against All Defendants)

20.    Gray re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

21.    On or about March 29, 2013, Gray made a demand on Defendants for a deposit of $150,000 pursuant to the Collateral Security provisions of the Indemnity Agreement.

22.    Defendants failed, and continue to fail, to provide the collateral security as requested by Gray and as required by the Collateral Security provisions of the Indemnity Agreement.

23.    On or about June 4, 2013, Gray requested in writing that Defendants pay Gray $304,014.15 pursuant to the Indemnity/Exoneration provision of the Indemnity Agreement for Gray's losses, costs and expenses incurred as a result of claims under the Bonds.

///

13.

COMPLAINT OF THE GRAY INSURANCE COMPANY

24.     Defendants failed, and continue to fail, to indemnify, exonerate and hold Gray harmless, as required by the Indemnity Agreement.

25.     As of the date of this Complaint, Gray incurred $353,648.10 in losses, costs, and expenses, including settlement payments, attorneys' fees, consultants' fees, and administrative expenses, and will continue to incur losses, costs, and expenses, including settlement payments, attorneys' fees, consultants' fees, and administrative expenses, as a result of Gray's issuance of the Bonds at the requests of Defendants, Lectrfy's alleged defaults under the Bonds, and Defendants' past and ongoing failures to comply with the terms of the Indemnity Agreement.

26.     Gray fully performed its obligations and duties under the Indemnity Agreement.

27.     As a result of Defendants' material breaches of the Indemnity Agreement, Gray suffered damages in an amount not less than $353,648.10, and in a total amount to be proved at trial.

WHEREFORE, Gray prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION – Specific Performance
### (Against All Defendants)

28.     Gray re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth in this cause of action.

29.     Defendants' agreements to the terms of the Indemnity Agreement served as partial consideration for Gray issuing the Bonds on behalf of Lectrfy.

30.     Given the nature of the obligations incurred by Gray, the terms of the Indemnity Agreement are just and reasonable.

31.     Gray fully performed its obligations and duties under the Indemnity Agreement.

///

COMPLAINT OF THE GRAY INSURANCE COMPANY

32.     On or about March 29, 2013, Gray made a demand on Defendants for a deposit of $150,000 pursuant to the Collateral Security provision of the Indemnity Agreement.  Defendants, however, failed to provide to Gray any of the deposit requested pursuant to the Collateral Security provisions of the Indemnity Agreement.

33.     The Indemnity Agreement specifically provides in pertinent part:

> **5.     Collateral Security**: . . . The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Surety, immediately upon demand, the sum demanded by Surety as collateral security shall cause irreparable harm to Surety for which Surety has no adequate remedy at law.  Therefore, the Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

Indemnity Agreement, Exhibit 1, at ¶ 5.

34.     On or about June 4, 2013, Gray requested Defendants pay Gray $304,014.15 pursuant to the Indemnity/Exoneration provision of the Indemnity Agreement.  Defendants, however, failed to indemnify, exonerate and hold Gray harmless as required by the Indemnity Agreement.

35.     The Indemnity Agreement specifically provides in pertinent part:

> **2.     Indemnity/Exoneration**:  .  .  .  The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety the sum demanded by the Surety as payment, immediately upon demand, shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law.  The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement, including the obligation to pay to the Surety the sum demanded, and hereby waive any claims or defenses to the contrary.

Indemnity Agreement, Exhibit 1, at ¶ 2.

36.     Gray is informed and believes, and thereon alleges the following: Lectrfy failed to pay numerous subcontractors and suppliers; Lectrfy received numerous claims which may be asserted against the Bonds; an owner of a

15.

1   bonded project received stop notice claims from Lectrfy's subcontractors and
2   suppliers which exceed the remaining contract balances on those projects and
3   which may result in additional claims against the Bonds; and an obligee made
4   claims against certain of the Bonds and contended that Lectrfy failed to
5   complete all of the obligations under certain of the Bonds.

6       37.    As of the date of this Complaint, Gray incurred $353,648.10 in
7   losses, costs, and expenses, including settlement payments, attorneys' fees,
8   consultants' fees, and administrative expenses, and will continue to incur
9   losses, costs, and expenses, including settlement payments, attorneys' fees,
10  consultants' fees, and administrative expenses, as a result of Gray's issuance of
11  the Bonds at the requests of Defendants, Lectrfy's alleged defaults under the
12  Bonds, and Defendants' past and ongoing failures to comply with the terms of
13  the Indemnity Agreement.

14      38.    Gray may receive additional claims against the Bonds.
15  Consequently, Gray may need to make additional demands on Defendants for
16  collateral and/or indemnity pursuant to the Indemnity Agreement.

17      39.    Based on the totality of circumstances, Gray is informed and
18  believes, and thereon alleges, that Defendants do not have the assets to satisfy
19  all of the claims asserted against Gray as a result of Gray issuing the Bonds.

20      40.    Gray requests Defendants be required and ordered to specifically
21  perform in accordance with the provisions of the Indemnity Agreement as
22  follows:

23          a.    Protect, exonerate and indemnify Gray from all loss, costs
24                and expenses which Gray incurs or sustains because of
25                having issued the Bonds;

26          b.    Deposit with Gray the amount of $353,648.10 pursuant to
27                the Indemnity Agreement; and

28

---

16.
COMPLAINT OF THE GRAY INSURANCE COMPANY

1      c. Deposit with Gray an amount which may be requested in

2        the future pursuant to the Indemnity Agreement.

3    WHEREFORE, Gray prays for judgment as hereinafter set forth.

4       **THIRD CAUSE OF ACTION – Injunctive Relief**

5        **(Against All Defendants)**

6     41. Gray re-alleges and incorporates by reference the allegations

7   contained in the preceding paragraphs of this Complaint as though fully set

8   forth in this cause of action.

9     42. Pursuant to the Indemnity Agreement, Defendants are required to

10   deposit collateral with Gray, acceptable to Gray, sufficient to cover all

11   exposure under the Bonds, or to make provisions acceptable to Gray for the

12   funding of the obligations under the Bonds.  Defendants failed, and continue to

13   fail, to deposit collateral with Gray, acceptable to Gray, sufficient to cover all

14   exposure under the Bonds, or to make provisions acceptable to Gray for the

15   funding of the obligations under the Bonds.

16     43. Pursuant to the Indemnity Agreement, Defendants are required to

17   protect, exonerate and indemnify Gray from all loss, costs and expenses which

18   Gray incurs or sustains because of having issued the Bonds.  Defendants failed,

19   and continue to fail, to protect, exonerate and indemnify Gray as required by

20   the Indemnity Agreement.

21     44. Gray is informed and believes, and thereon alleges the following:

22   Lectrfy failed to pay numerous subcontractors and suppliers; Lectrfy received

23   numerous claims which may be asserted against the Bonds; an owner of a

24   bonded project received stop notice claims from Lectrfy's subcontractors and

25   suppliers which exceed the remaining contract balances on those projects and

26   which may result in additional claims against the Bonds; and an obligee made

27   claims against certain of the Bonds and contended that Lectrfy failed to

28   complete all of the obligations under certain of the Bonds.

17.

45.     As of the date of this Complaint, Gray incurred $353,648.10 in losses, costs, and expenses, including settlement payments, attorneys' fees, consultants' fees, and administrative expenses, and will continue to incur losses, costs, and expenses, including settlement payments, attorneys' fees, consultants' fees, and administrative expenses, as a result of Gray's issuance of the Bonds at the requests of Defendants, Lectrfy's alleged defaults under the Bonds, and Defendants' past and ongoing failures to comply with the terms of the Indemnity Agreement.

46.     Gray may receive additional claims against the Bonds. Consequently, Gray may need to make additional demands on Defendants for collateral and/or indemnity pursuant to the Indemnity Agreement.

47.     Based on the totality of circumstances, Gray is informed and believes, and thereon alleges, that Defendants do not have the assets to satisfy all of the claims asserted against Gray as a result of Gray issuing the Bonds.

48.     Gray requests Defendants be required and ordered to perform as follows:

        a.     Protect, exonerate and indemnify Gray from all loss, costs and expenses which Gray incurs or sustains because of having issued the Bonds;

        b.     Deposit with Gray the amount of $353,648.10 pursuant to the Indemnity Agreement;

        c.     Deposit with Gray an amount which may be requested in the future pursuant to the Indemnity Agreement; and

        d.     Defendants be enjoined and restrained from selling, transferring, disposing, liening, encumbering or impairing of Defendants' assets and property, or Gray's security (as identified in the Indemnity Agreement), or allowing Defendants' assets and property, or Gray's security (as

18.

1              identified in the Indemnity Agreement) to be sold,

2              transferred, liened, encumbered or impaired.

3        49.    Unless injunctive relief is granted, Gray will not be adequately

4 secured for its obligations under the Bonds, to Gray's irreparable harm.

5        50.    Unless injunctive relief is granted, the Defendants are likely to

6 transfer or otherwise divert their assets from being used to protect, exonerate

7 and indemnify Gray from all loss, costs and expenses which Gray incurs or

8 sustains because of having issued the Bonds, all to Gray's irreparable harm.

9      WHEREFORE, Gray prays for judgment as hereinafter set forth.

10      **FOURTH CAUSE OF ACTION - *Quia Timet***

11      **(Against All Defendants)**

12      51.    Gray re-alleges and incorporates by reference the allegations

13 contained in the preceding paragraphs of this Complaint as though fully set

14 forth in this cause of action.

15      52.    Various claimants alleged that Lectrfy failed to fulfill performance

16 and payment obligations, and, as a result, those claimants made claims under

17 the Bonds.

18      53.    Gray repeatedly requested, both orally and in writing, Defendants

19 to protect, exonerate and indemnify Gray from all loss, costs and expenses

20 which Gray incurs or sustains because of having issued the Bonds.  Defendants

21 failed, and continue to fail, to protect, exonerate and indemnify Gray as

22 required by the Indemnity Agreement.

23      54.    The circumstances and conduct described above indicate that

24 Defendants are incurring losses, costs and expenses on the Projects, which

25 conduct is exposing and will continue to expose Gray to increasing losses,

26 costs and expenses under the Bonds.

27 ///

28 ///

COMPLAINT OF THE GRAY INSURANCE COMPANY

55.    The circumstances and conduct described above indicate that Defendants will not be able to mitigate or cure the increasing liability to which Gray will be exposed as a result of Gray's issuance of the Bonds.

56.    The circumstances and conduct described above indicate that Defendants will not, or may not be able to, provide indemnity or collateral to Gray for the sums for which Gray has become, is becoming, and may become liable under the Bonds, which caused Gray apprehension and fear of impending liability.

57.    Based on the foregoing, Gray alleges that it may not or will not be reimbursed by Defendants for past or future payments made by Gray under or as a result of the Bonds.  Therefore, Gray will suffer irreparable harm if Gray's prayer for relief as to the Second and Third Causes of Action is not granted.

WHEREFORE, Gray prays for judgment as hereinafter set forth.

## <u>PRAYER FOR RELIEF</u>

Gray prays for judgment in this action as follows:

### <u>On the First Cause of Action – Breach of Written Indemnity Agreement</u>

1.    For compensatory damages in an amount not less than $353,648.10, with the actual amount of compensatory damages to be proven at trial;

2.    For interest at the maximum legal rate;

3.    For attorneys' fees and costs incurred herein; and

4.    For such other and further relief as the Court may deem just and proper.

///
///
///
///
///

COMPLAINT OF THE GRAY INSURANCE COMPANY

**On the Second Cause of Action – Specific Performance**

    1.    For an Order requiring the Defendants to specifically perform the following:

        a.    Protect, exonerate and indemnify Gray from all loss, costs and expenses which Gray incurs or sustains because of having issued the Bonds;

        b.    Deposit with Gray the amount of $353,648.10 pursuant to the Indemnity Agreement;

        c.    Deposit with Gray an amount which may be requested in the future pursuant to the Indemnity Agreement;

    2.    For interest at the maximum legal rate;

    3.    For attorneys' fees and costs incurred herein; and

    4.    For such other and further relief as the Court may deem just and proper.

**On the Third Cause of Action – Injunctive Relief**

    1.    For an Order for a preliminary injunction requiring the following:

        a.    Protect, exonerate and indemnify Gray from all loss, costs and expenses which Gray incurs or sustains because of having issued the Bonds;

        b.    Deposit with Gray the amount of $353,648.10 pursuant to the Indemnity Agreement;

        c.    Deposit with Gray an amount which may be requested in the future pursuant to the Indemnity Agreement;

        d.    Defendants be enjoined and restrained from selling, transferring, disposing, liening, encumbering or impairing of Defendants' assets and property, or Gray's security (as identified in the Indemnity Agreement), or allowing Defendants' assets and property, or Gray's security (as

21.

1   identified in the Indemnity Agreement) to be sold,

2   transferred, liened, encumbered or impaired;

3   2.   For attorneys' fees and costs incurred herein; and

4   3.   For such other and further relief as the Court may deem just and

5   proper.

6   **On the Fourth Cause of Action – *Quia Timet***

7   1.   For an Order stating that, under the equitable doctrine of *quia*

8   *timet*, Gray is entitled to the relief as requested under Gray's

9   Second and Third Causes of Action;

10   2.   For interest at the maximum legal rate;

11   3.   For attorneys' fees and costs incurred herein; and

12   4.   For such other and further relief as the Court may deem just and

13   proper.

14

15   Dated:   September 10, 2013

WOLKIN · CURRAN, LLP

16

17   By: _____

Shashauna Szczechowicz
sszczechowicz@wolkincurran.com

18

19   Attorneys for Plaintiff, THE GRAY
INSURANCE COMPANY

20

21

22

23

24

25

26

27

28

22.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

- *Indemnity Agreement*

# GRAY SURETY

**THE GRAY CASUALTY & SURETY COMPANY**
**THE GRAY INSURANCE COMPANY**

## General Indemnity Agreement

One or more of the undersigned, herein called Indemnitors, has requested or may request The Gray Casualty & Surety Company or The Gray Insurance Company, herein individually and collectively called Surety, to furnish, procure or continue contracts of suretyship, guaranty, or other obligatory instruments, herein called Bonds, on behalf of any one or more of the Indemnitors.

By execution of this Agreement, the Indemnitors expressly warrant their material or beneficial interest in such Bonds, and in consideration of the furnishing, procuring or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby jointly and severally agree to the following:

1. **Definitions:** For purposes of this Agreement, the terms below shall be defined as follows:
   a. Agreement – This General Indemnity Agreement.
   b. Bonds – Any and all contracts of suretyship, guarantees, obligations and undertakings.
   c. Indemnitors – One or more of the undersigned, and their respective heirs, successors, assigns, co-venturers, parents, affiliates, divisions and subsidiaries, where now existing or hereafter acquired or created.
   d. Surety – The Gray Casualty & Surety Company, The Gray Insurance Company, any of their present or future direct or indirect parent companies, any of their respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns.
   e. Principal – A person or entity in whose name a Bond is issued.
   f. Contract – Any contract or obligation, the performance of which is guaranteed or covered either in whole or in part under a Bond.
   g. Loss – All loss and expense of any kind or nature, including attorneys' and other professionals' fees, which Surety incurs in connection with any Bond or this Agreement including, but not limited to, all loss and expense incurred by reason of Surety's: (i) making any investigation in connection with any Bond; (ii) prosecuting or defending any action in connection with any Bond; (iii) obtaining the release of any Bond; (iv) recovering or attempting to recover collateral or security in connection with any Bond or this Agreement; (v) enforcing by litigation or otherwise, any of the provisions of this Agreement; (vi) all interest accruing thereon at the maximum legal rate; (vii) any funds advanced to the Principal for any reason, including, but not limited to, the completion of any Contract or contract or for operating expenses of the Principal.
   h. Default: An Indemnitor shall be deemed in default under this Agreement in the event that it:
      i. Is declared to be in default by the Obligee of any Bond;
      ii. Abandons, forfeits or breaches, or fails, refuses or is unable to perform a Contract;
      iii. Fails, refuses or is unable to pay any bill or satisfy any debt incurred in connection with the performance of any obligation guaranteed by the Bond;
      iv. Becomes the subject of any agreement or proceeding of liquidation or receivership, actually becomes insolvent, or requests financial assistance from the Surety;
      v. Dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
      vi. Breaches or fails to perform or comply with any provision of this Agreement.

2. **Indemnity/Exoneration:** The Indemnitors jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all Loss, liability, damages and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which the Surety may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with any of the covenants and conditions of this Agreement, or the failure of the Indemnitors to discharge any obligations under this Agreement; (c) in enforcing any of the terms, covenants or conditions of this Agreement; or (d) in pursuing reimbursement for any Loss incurred hereunder.

Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. The amount of such payment to the Surety by the Indemnitors shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Indemnitors.

The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invest or to provide a return on the payment or any other collateral deposited with the Surety. The Indemnitors shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Indemnitors at the addresses of the Indemnitors last known to the Surety, regardless of whether such demand is actually received.

The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety the sum demanded by the Surety as payment, immediately upon demand, shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement, including the obligation to pay to the Surety the sum demanded, and hereby waive any claims or defenses to the contrary.

In the event of payment of any kind by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity, or expediency existed. An itemized statement by an employee of such Surety, or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

3. **Assignment:** The Indemnitors, hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Indemnitors to the Surety, whether heretofore or hereafter incurred:

  a.   All the rights of the Indemnitors in, and growing in any manner out of, the Bonds or any Contracts referred to in the Bonds;
  b.   All the rights, title and interest of the Indemnitors in and to all machinery, equipment, vehicles, plant, tools and materials that are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all Contract referred to in the Bonds or elsewhere, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;
  c.   All the rights, title and interest of the Indemnitors in and to all surety bonds supporting such Contracts;
  d.   All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever that the Indemnitors may have or acquire against any party, including, but not limited to, owners, obligees, subcontractors, laborers or materialmen, architects, engineers, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or including, but not limited to, prime contractors, subcontractors, laborers, or materialmen;
  e.   Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all Contracts in which the Indemnitors have an interest;
  f.   Any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, and general intangibles;
  g.   Any and all policies of insurance.

The Surety shall not be liable for decrease in value, loss, destruction or damage to such collateral, however caused.  These assignments shall become effective retroactive to the date of the first Bond, but only in the event of any of the following:

  a.   any abandonment, forfeiture or breach or alleged breach of any Contracts or of any breach or alleged breach of any Bonds;
  b.   of any breach or alleged breach of the provisions of any of the paragraphs of this Agreement;
  c.   of a default or alleged default in discharging such other indebtedness or liabilities when due;
  d.   of any assignment by the Indemnitors for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or trustee for the Indemnitors whether insolvent or not;
  e.   of any proceeding that deprives the Indemnitors of the use of any of the machinery, equipment, plant, tools or materials referred to in section (b) of the preceding paragraph.
  f.   of the Indemnitor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if the Indemnitor be an individual.

In the event these assignments become operative, the Indemnitors authorize the Surety, at its sole discretion and to the extent it deems appropriate, but without any obligation on its part, to assert and pursue all of the assigned, transferred or conveyed rights, actions, causes of action, claims and/or demands and to take possession of all or part of the work plus all associated supplies, tools, plant, machinery, equipment, materials, records, drawings and plans, and to arrange for the completion of such work, or to relet or consent to the reletting or completion of, any Contract.

4. **Security Interest:**  This Agreement constitutes a security agreement to or with the Surety and also a financing statement enforceable under the Uniform Commercial Code ("UCC") and all similar statutes now or hereafter in force in any jurisdiction.  The Indemnitors hereby consent to the Surety perfecting its rights hereunder as it deems necessary or prudent without providing Indemnitors with any further notice and without seeking any additional consent from the Indemnitors.  Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a financing statement under the UCC, and the Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a financing statement or the filing of a financing statement based upon this Agreement as a security agreement in such states, counties/parishes and other places as the Surety shall deem necessary or prudent.

The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.  The Surety's filing of the UCC statement shall not in any way abrogate, restrict or limit the rights of Surety under this Agreement or under law or in equity.

5. **Collateral Security:**  On demand by Surety, the Indemnitors will pay Surety an amount Surety deems necessary to protect itself from all Loss or expenses as soon as Surety determines that liability exists or has reasonable basis to believe that it may incur liability, whether or not Surety has made any payment or created any reserve.  Upon demand, Indemnitors also agree to pay an amount equal to the value of any assets or bonded Contract funds that Indemnitors diverted in violation of Paragraph 9 of this Agreement and/or to establish a trust account in accordance with Paragraph 9.  Surety shall have no duty to invest, or to provide interest on, any such deposit.

Surety shall have the right to use the collateral, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors are or would be obligated to indemnify Surety under the terms of this Agreement.  The liability of the Principal and Indemnitors hereunder shall not be affected by the return or exchange of any collateral that may have been obtained.

Surety may release, sell or realize upon any or all such collateral security, at public or private sale, in its absolute discretion with or without notice to the Indemnitors, or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Indemnitors only for such surplus or remainder of such collateral security or the proceeds thereof as may be in Surety's possession after it has been fully indemnified and made whole under this Agreement, the common law, and all other agreements among Surety and the Indemnitors.  Surety shall not be liable for decrease in value, release of, loss or destruction of, or damage to such collateral, however caused.

The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Surety, immediately upon demand, the sum demanded by Surety as collateral security shall cause irreparable harm to Surety for which Surety has no adequate remedy at law.  Therefore, the Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.

6. **Financial Statements:**  The Indemnitors acknowledge that any and all financial statements and other financial representations provided to the Surety act as a warranty of the Indemnitors' financial viability.  Indemnitors further acknowledge that the Surety has relied on the representations contained in the financial statements as the basis for issuing surety credit, and that any misinformation provided to the Surety is a basis for denying a discharge of the Indemnitors' liability to the Surety in bankruptcy.

7. **Attorney-In-Fact:**  The Indemnitors hereby irrevocably nominate, constitute, appoint and designate Surety and its designees as their attorney-in-fact with the right, power, and authority, but not the obligation, to exercise all of the rights and powers of the Indemnitors that have been assigned, transferred and set over to Surety in this Agreement, and in the name of the Indemnitors, or any one or more of them, to make, endorse, execute, sign, and deliver any and all additional or other instruments and writings, including, but not limited to, assignments, financing statements, documents, instruments, checks, drafts, deposits, ACH (automatic clearing house), wire transfer directives and orders, change of address notices, liens and releases thereof, applications, certificates, draw requests, orders, releases and papers deemed necessary or desirable by Surety,

and to collect the proceeds thereof, in order to give full effect not only to the intent and meaning of the obligations assumed and the agreements made by Indemnitors hereunder, and the assignments and conveyances made herein, but also the full protection intended to be herein given to Surety under all other provisions of this Agreement.

The Indemnitors hereby ratify and confirm all that such attorney-in-fact or Surety may do for the purposes set forth in this Agreement.  The Indemnitors specifically agree to protect, indemnify and save and hold harmless Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which the Indemnitors have or might hereafter have against Surety or such attorney-in-fact on account of anything done in enforcing the terms of this Agreement.

8.  **Right to Financial Information:**  Any entity having possession of such information, including but not limited to each and every Indemnitor; bank; depository; accounting firm; creditor; obligee of a Bond; subcontractor; supplier; supply house; governing entity; or other persons, firms, corporations or Governments possessing records or having information concerning the financial affairs and operation of the Principal, is hereby authorized and required to furnish the Surety, upon the Surety's request and as often as requested, any and all said information related to the Bonds and/or Contracts, including, but not limited to, the status of the work and payments under any Contract, Principal's payments of accounts, and the financial status of the Principal.  Upon Surety's request, Principal and Indemnitors shall immediately turn over to Surety, or its designee, as often as requested and at a time and place and in a manner determined by Surety, such books, records, accounts, documents, computer software and other electronically-stored information, as and when requested by Surety.

Each Indemnitor agrees that a photocopy of this Agreement shall constitute a written request of the Indemnitor that the Surety may present to a Consumer Credit Reporting Agency as proof of Surety's authority to periodically obtain a Consumer Reports as defined under the Fair Credit Reporting Act.

9.  **Trust fund:**  The Indemnitors covenant and agree that the entire contract price of any Contract, whether in the possession of the Principal, Indemnitors, obligee or another, shall be and hereby are impressed with a trust ("Trust Funds") in favor of Surety, and said Trust Funds are to be used to pay all laborers, materialmen, suppliers and subcontractors furnishing labor, material and services in the performance of the Contract for which Surety would be liable and to also be used to satisfy the conditions of the Bond executed in connection with the Contract.  The Trust Funds shall inure to the benefit of Surety for any liability, loss, cost, or expense which Surety may have or sustain under any Bond.

Upon notification by the Surety and in further implementation of the trust or trusts hereby created, Principal and Indemnitors agree to the Surety's appointment of an escrow agent or disbursing servicer to manage the trust payments, or to the opening of a trust account with a bank acceptable to the Surety.  Should a trust account be opened, withdrawals from the trust account shall be by check or similar instrument signed by the Principal and countersigned by a representative of the Surety.  Said trust or trusts shall terminate upon the payment by the Principal or Indemnitors of all of the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of twenty (20) years from the date hereof, whichever shall first occur.

10.  **Advances:**  The Surety, in its sole discretion, is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Indemnitors any money, as the Surety may see fit, for the purpose of any Contracts, and all money expended in the completion of any such Contracts by the Surety, or lent or advanced from time to time to the Indemnitors, or guaranteed by the Surety for the purposes of any such Contracts.  All such bank guarantees, advances or loans shall be conclusively deemed to be a Loss to the Surety for which the Principal and Indemnitors are liable to reimburse the Surety under the Agreement, notwithstanding the fact that all or some of the money may not be utilized by the Principal for the purposes for which the money was advanced or loaned.  The Surety retains the absolute right to cancel any such guarantee, advance or loan with or without cause and with or without notice to the Indemnitors.

11.  **Federal Contract Funds:**  The Principal agrees and hereby consents, pursuant to section 49.404(e)(4) of the Federal Acquisition Regulations to all the federal government of the United States, any federal agency, subdivision or instrumentality to reimburse the Surety for discharging its liabilities under a payment bond out of retained percentages, progress estimates for work accomplished prior to a termination, unpaid earnings and remaining job funds.

12.  **Claim Settlement:**  Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, regardless of whether liability exists, and its determination shall be final, binding and conclusive upon the Indemnitors.  The Surety shall have no obligation to tender its defense to any Indemnitor.  If the Surety elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to Surety for any and all Loss, costs, damages, interest and expenses, including but not limited to attorneys' fees and professionals' fees resulting from the Surety's investigation and/or defense.  Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

13.  **Principal's Offer to Defend:**  Surety shall at all times have the right, but not the obligation, to retain legal counsel of its own choosing to defend itself from any actual or threatened claim, lien, levy, liability, lawsuit or judgment brought in connection with any one or more Bonds, or against any monies arising from or related to any Contract, or against other collateral security deposited with Surety or held by a third party on Surety's behalf, and the cost of retaining such counsel shall be the responsibility of the Principal and Indemnitors under this Agreement.

14.  **Proceedings Brought Against Surety:**  In the event of suit or legal proceedings against the Surety upon or on account of any such Bond, the Surety shall have the right to apply to the court in which such action is brought for an order making the Indemnitors defendants, and the Indemnitors hereby consent to the granting of such application and agree to become such party defendants and accept service of process and other papers personally or by an attorney of such Indemnitor's choice, and in the event any judgment be rendered against the Surety, to allow judgment in like amount to be rendered against the Indemnitors in favor of Surety, if the Surety so requests.

15.  **Notice to Surety:**  Surety shall be notified immediately by the Indemnitors of any demand, notice, suit, action, proceeding, claim or action that may result in a claim against Surety, and shall cooperate with Surety in the defense thereof.  Such notice shall be given to Surety by registered or certified mail at its home office.

16.  **Notice to Indemnitors:**  The Indemnitors agree among themselves and hereby acknowledge to Surety that notification by Surety to any one Indemnitor shall constitute notification to all Indemnitors.

17.  **Notice of Changes:**  Surety, without notice to the Indemnitors and despite any increase in their liability, may agree to either: (a) changes in Bonds or Contracts or the plans and specifications relating to them; or (b) the addition of Indemnitors by addendum to this Agreement, or release by Surety, on terms satisfactory to it, of any Indemnitor.

18.  **Waiver of Notice:**  The Indemnitors expressly waive any notice of the following to which they may be entitled, notwithstanding any defenses they otherwise may have been able to assert: (a) the execution of any Bonds or the refusal to execute any Bonds; (b) defaults under Contracts or any

acts which might result either in claims or in liabilities of Surety under any Bonds, and (c) any act, fact or information concerning or affecting rights or liabilities of Surety or any Indemnitor.

19. **Separate Actions-Settlement:** Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action against any or all of the Indemnitors shall not prejudice or bar the bringing of other suits upon other causes of action, or the bringing of other suits, or the recovery of judgment or judgments against the Indemnitors, whether theretofore or thereafter arising. The Indemnitors agree that each Indemnitor executing this Agreement is an agent for all of the other Indemnitors executing this Agreement for the purpose of accepting service of any process in the jurisdiction in which the Indemnitor accepting the process resides, is domiciled, is doing business or is found. In the event that Surety shall file suit at law or in equity to enforce the terms of this Agreement, Surety shall be entitled to recover its own attorneys' fees and expenses in connection with that suit. The Surety is hereby expressly authorized by the Indemnitors to compromise or settle any claim based upon this Agreement with any one or more of the Indemnitors individually, and such compromise or settlement shall not affect the liability of any non-settling Indemnitor to the Surety.

20. **Confession of Judgment:** Effective upon the occurrence of any breach or default by Principal and/or any one or more Indemnitors of any of the provisions of this Agreement, Principal and Indemnitors hereby jointly and severally irrevocably authorize and empower any attorney of record, or prothonotary, or clerk of any jurisdiction within the United States or any of its territories or possessions to appear for any one or more of them at any time or times with respect to any monies due under this Agreement, and to confess or enter judgment by warrant of attorney against any or all of them for all such sums payable under this Agreement as evidenced by an affidavit signed by an authorized representative of Surety setting forth such amount due, plus reasonable attorneys' fees, costs of suit, interest, with release of procedural errors and without right of appeal. If a copy of this Agreement, verified by affidavit, shall be filed, it shall not be necessary to filed the original as a warranty of attorney. No single exercise of the foregoing warrant and power to bring an action or confess judgment shall be deemed to exhaust the power but the power shall continue undiminished and may be exercised from time to time as often as Surety shall elect, whether before or after demand is made, until all sums payable to Surety under this Agreement have been paid in full.

Each of the Indemnitors represents and warrants that (s)he has read the foregoing confession of judgment and understands that (s)he is giving up the right to a hearing before judgment is confessed, levy and execution made, and that each gives up the right to such hearing freely and voluntarily in this business transaction.

21. **Jurisdiction:** In any legal proceeding brought by or against Surety that in any way relates to this Agreement, each Indemnitor, for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of Surety, of any local, state or federal court of competent subject matter jurisdiction and waives any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis. The Indemnitors further waive personal service of any and all process.

22. **Jury Waiver:** The Indemnitors and the Surety each hereby waive trial by jury in any action or proceeding to which any or all of the Indemnitors and the Surety may be parties, arising out of or in any way pertaining to this Agreement. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Agreement. This waiver is knowingly, willingly and voluntarily made by the Indemnitors and the Surety and the Indemnitors and the Surety each represent and warrant that no representations of fact or opinion have been made by any individuals to induce this waiver of trial by jury or to in any way modify or nullify its effect.

23. **Premium:** The Principal and Indemnitors shall pay to the Surety premium, fees and charges at the rates and at the times specified by the Surety, and will continue to pay them when such premium, fee or charge is annual and when additional premiums, fees or charges are due for changes to underlying bonded obligations.

24. **Application of Agreement:** This Agreement applies to all Bonds executed by the Surety, whether prior to, simultaneous with, or subsequent to the date of execution of this Agreement: (a) on which any Indemnitor either acts solely or as a member of a partnership or a joint venture, or any other business entity; or (b) in connection with which any Indemnitor acts as a silent partner or a silent joint venturer. If the Surety procures the execution of Bonds by other sureties, or executes Bonds with co-sureties, or procures reinsurance, the provisions of this Agreement shall inure to the benefit of other such sureties, co-sureties and reinsurers as their interests may appear.

25. **Cumulative, Joint and Several Obligations:** The Surety's rights under this Agreement are cumulative with, and in addition to, all other rights of the Surety, however derived. The Surety is not required to enforce or exhaust its rights or remedies against any one Indemnitor before asserting its rights against any other Indemnitor.

The Indemnitors shall continue to remain bound under this Agreement even though the Surety may, from time to time, with or without notice to or knowledge of the Indemnitors, have heretofore accepted or released, or shall hereafter accept or release, other agreements of indemnity or collateral in connection with the execution of the Bonds from the Indemnitors or from others.

If any of the Indemnitors fails to execute this Agreement or if the execution hereof by any of the Indemnitors shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other of the Indemnitors. Failure of the Principal to sign any Bond shall not relieve the Indemnitors of liability under this Agreement.

If any provision or provisions of this Agreement, are held to be void or unenforceable under the laws of the place governing its construction or enforcement, this Agreement shall not be void or unenforceable thereby, but shall continue in effect and be enforced as though such provision or provisions were omitted.

26. **Acceptability and Validity of Bonds:** The Principals and the Indemnitors acknowledge that the Surety makes no representations as to the validity or acceptability of its Bonds to any particular party under any particular Contract.

27. **Declination of Bonds:** Surety may, in its sole and absolute discretion, decline to execute any Bond without incurring any liability to any Indemnitor or waiving any right. This includes Bonds required in connection with the performance of a Contract awarded under a proposal for which the Surety has executed a bid or proposal Bond, a bid letter, consent of surety or an agreement of surety. Such declination by the Surety shall not affect the liability of any Indemnitor to the Surety relating to other Bonds or to this Agreement.

28. **Change in Liability Insurance:** The Principal agrees to notify Surety immediately upon their receipt of any notice or knowledge that its liability insurance has been or will be cancelled, terminated or non-renewed, or that such coverage will be reduced. Indemnitors agree to name Surety as a certificate holder on all insurance policies issued in connection with the performance of any Contract.

29. **Changes to Corporate Structure and/or Marital Status:** Should a Principal and/or Indemnitor seek to change or convert its respective corporate or partnership status. Principal and/or Indemnitor agree to inform Surety of any such changes prior to the implementation of any such change in corporate structure. Should any Indemnitor change his or her marital status, Indemnitors agree to inform Surety of any such changes in marital status. Furthermore, Indemnitors expressly agree that any such changes to corporate structure and/or marital status shall not limit, reduce or

otherwise shield their obligations, and their partners' and/or officers' obligations, to Surety which arise from this Agreement. Indemnitors expressly waive as against Surety any and all defenses which may arise from such a conversion to a different status.

30. **Date of Agreement:** The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

31. **Termination:** This is a continuing Agreement, which remains in full force and effect until terminated. The sole method available to Indemnitors to terminate their participation in this Agreement is by giving written notice via registered or certified mail to Surety of Indemnitors' intent to terminate at Surety's home office address. Termination by one Indemnitor does not affect the obligations of non-terminating Indemnitors under this Agreement. The termination shall take effect thirty (30) days after Surety receives such notice ("Termination Date"). The notice shall not relieve Indemnitor from its obligations for any Bond executed prior to the Termination Date or with respect to any Bond executed after the Termination Date: (a) upon the award of a Contract to any Indemnitor on a bid or proposal in respect of which Surety has executed or procured a bid Bond prior to the Termination Date; or (b) which Surety has become committed to execute or procure prior to the Termination Date; or (c) in connection with any maintenance, guarantee, claim, lien, litigation, or other matter involving or relating to any Bond executed prior to the Termination Date or thereafter executed or procured as provided in Subparagraphs (a) or (b) above. It is understood and agreed that oral or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this Agreement.

32. **Subordination to Surety's Rights:** In the event that an Indemnitor shall borrow any money to finance the Contract or shall undertake to make any assignment of the Contract or any monies due or to become due thereunder, then it is expressly agreed that any such assignment shall be subordinate and inferior to the rights of the Surety hereunder.

33. **Assignment of Rights to Third Parties:** The Principal and Indemnitors warrant that for any Contract, the Principal shall not assign its right to receive payments from the obligee to any third party, including a factor, without the express written consent of the Surety, executed by an officer of the Surety (not by an attorney-in-fact). The Indemnitors agree and acknowledge that if Principal assigns its right to receive payments to a third party without the Surety's written consent, the Indemnitors shall, upon Surety's demand, procure the discharge of the Surety from the Bond of such assigned Contract or the Indemnitors shall immediately deposit with the Surety cash collateral equal to the penal sum of the Bond issued on such Contract. If the Indemnitors do not procure the discharge of the Surety, or they do not deposit the requisite collateral with the Surety, the Surety may obtain a judgment against the Indemnitors for the penal sum of the Bond, plus costs of suit and reasonable attorneys' fees.

34. **Compensated Surety:** The Surety shall have every right and remedy that a personal surety without compensation would have, including the right to secure its discharge from the suretyship, and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this Agreement were not executed.

35. **Waiver of Homestead Exemption:** The Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States. However, such waiver is only effective as permitted under the laws of the state(s) in which such waiver is to have effect.

36. **Miscellaneous:** Wherever used in this Agreement, the plural term shall include the singular and the singular shall include the plural, as the circumstances require. The words Indemnitor or Indemnitors, or the personal pronouns used to refer to said words, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

37. **Severability:** If any provision or provisions of this Agreement are deemed to be void, illegal or otherwise unenforceable under any law governing its construction or enforcement, this Agreement shall not be considered void or terminated thereby, but instead shall continue to be enforced as though such provision or provisions were omitted from this Agreement, all other terms and conditions to remain in full force and effect.

38. **Representations:** This Agreement, and the Bonds issued pursuant to this Agreement, constitute the entire Agreement among the Principal, Indemnitors and the Surety regarding the rights and obligations of the parties hereto with respect to indemnity for losses arising under the Bonds and supersedes any prior agreement between the parties. This Agreement and the rights and remedies of Surety hereunder may not be waived, changed or modified orally. No written waiver, change, or modification shall be effective unless signed by an officer or other authorized representative of the Surety.

39. **Copies:** All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all of the parties hereto.

40. **Acknowledgement:** The Indemnitors hereby acknowledge that they have had an opportunity to consult with legal counsel with regard to this Agreement, that Indemnitors have read and understand this Agreement, that Indemnitors are fully aware of its legal effect, and that Indemnitors have entered into it freely and voluntarily and based on Indemnitors' own judgment and not on any representations or promises other than those contained in this Agreement.

Current home office address of Surety
Gray Surety Claims Department
Suite 300, 2750 Lake Villa Drive, Metairie LA 70002

Email Graysuretyclaims@graysurety.com
Phone 504 780-7440
Fax 504 780-9211

Dated and effective this 29th day of   November, 2011.  ⬅

IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES AND DENIAL OF BENEFITS.

**PLEASE USE A BLUE INK PEN FOR ALL SIGNATURES.**
**ALL INDEMNITORS MUST INITIAL EACH PAGE.**

If Indemnitor is a Corporation:  Corporate signatures must be by corporate officer empowered to sign.

| Corporate Signatory: 1 | Name of Corporation Lectrfy, Inc. | (SEAL) |
|---|---|---|
| Witness 1: | Witness 2: | By: |
| Name: Cristian Garcia | Name: Matthew W. Oills | Name/Title: Robert C. Armijo President |

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
the (Title) _____ of (Organization) _____, described in
and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the same as and
for the act of deed of said firm.

(NOTARY PUBLIC)

If Indemnitor is a Trust:  Trust signatures must be by all trustees empowered to sign.

| Trustee Signatory: 1 | | Name of Trust The Robert C. Armijo Living Trust |
|---|---|---|
| Witness 1: | Witness 2: | By: |
| Name: Joanne Manimbo | Name: Cristian Garcia | Name: Robert C. Armijo (As a Trustee) |

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
the (Title) _____ of (Organization) _____, described in
and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the same as and
for the act of deed of said firm.

(NOTARY PUBLIC)

| Trustee Signatory: 2 | | Name of Trust |
|---|---|---|
| Witness 1: | Witness 2: | By: |
| Name: | Name: | Name: (As a Trustee) |

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
the (Title) _____ of (Organization) _____, described in
and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the same as and
for the act of deed of said firm.

(NOTARY PUBLIC)

**PLEASE USE A BLUE INK PEN FOR ALL SIGNATURES.**
**ALL INDEMNITORS MUST INITIAL EACH PAGE.**

If Indemnitor is a Trust: Trust signatures must be by all trustees empowered to sign.

Trustee Signatory: 3

Name of Trust

Witness 1: _____  Witness 2: _____  By: _____

Name: _____  Name: _____  Name: _____

(As a Trustee)

State of _____, County/Parish _____ on the _____ day of _____, _____.

Before me personally appeared _____ to me known, who being by me duly sworn did proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is the (Title) _____ of (Organization) _____, described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the same as and for the act of deed of said firm.

(NOTARY PUBLIC)

Trustee Signatory: 4

Name of Trust

Witness 1: _____  Witness 2: _____  By: _____

Name: _____  Name: _____  Name: _____

(As a Trustee)

State of _____, County/Parish _____ on the _____ day of _____, _____.

Before me personally appeared _____ to me known, who being by me duly sworn did proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is the (Title) _____ of (Organization) _____, described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the same as and for the act of deed of said firm.

(NOTARY PUBLIC)

If Indemnitor as an Individual: Include all owners of the parties and their spouse. Spousal indemnity is rarely excluded. Spouses may not sign as a witness.

Individual Signatory: 1

Name
Robert C. Armijo

Witness 1: _Joanne Manimbo_  Witness 2: _Cristian Garcia_  By: _____

Name: _____  Name: _____  Social Security Number
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

State of _____, County/Parish _____ on the _____ day of _____, _____.

Before me personally appeared _____ to me known, who being by me duly sworn did proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the same as and for the act of deed of said firm.

(NOTARY PUBLIC)

All Indemnitors must initial each page.   General Indemnity Agreement   (Rev 5/5/2011)   00000105004   Page 7 of 9

**PLEASE USE A BLUE INK PEN FOR ALL SIGNATURES.**
**ALL INDEMNITORS MUST INITIAL EACH PAGE.**

If Indemnitor as an Individual:  Include all owners of the parties and their spouse.   Spousal indemnity is rarely excluded.
Spouses may not sign as a witness.

Individual Signatory: 2

| | | Name |
|---|---|---|
| Witness 1: | Witness 2: | By: |
| Name: | Name: | Social Security Number |

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the
same as and for the act of deed of said firm.

(NOTARY PUBLIC)

Individual Signatory: 3

| | | Name |
|---|---|---|
| Witness 1: | Witness 2: | By: |
| Name: | Name: | Social Security Number |

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the
same as and for the act of deed of said firm.

(NOTARY PUBLIC)

Individual Signatory: 4

| | | Name |
|---|---|---|
| Witness 1: | Witness 2: | By: |
| Name: | Name: | Social Security Number |

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the
same as and for the act of deed of said firm.

(NOTARY PUBLIC)

**PLEASE USE A BLUE INK PEN FOR ALL SIGNATURES.**
**ALL INDEMNITORS MUST INITIAL EACH PAGE.**

<u>If Indemnitor as an Individual:</u>  Include all owners of the parties and their spouse.   Spousal indemnity is rarely excluded.
Spouses may not sign as a witness.

Individual Signatory: 5

Name

Witness 1:

Witness 2:

By:

Name:

Name:

Social Security Number

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the
same as and for the act of deed of said firm.

(NOTARY PUBLIC)

Individual Signatory: 6

Name

Witness 1:

Witness 2:

By:

Name:

Name:

Social Security Number

State of _____, County/Parish _____ on the _____ day of _____, _____.
Before me personally appeared _____ to me known, who being by me duly sworn did
proposed and say: that s(he) resides in (City), _____ (State) _____; that s(he) is
described in and who executed the foregoing instrument, and s(he) acknowledged to me that s(he) executed the
same as and for the act of deed of said firm.

(NOTARY PUBLIC)

Reminder – Please make sure the application has been SIGNED, WITNESSED and DATED in the appropriate areas.



All Indemnitors must initial each page.        General Indemnity Agreement        (Rev 5/5/2011)        00000105004        Page 9 of 9

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of ___Orange___ }

On __November 30, 2011__ before me, ___Caroline Munoz, Notary___
<br>Date                            Here Insert Name and Title of the Officer

personally appeared ___Robert C. Armijo___
<br>Name(s) of Signer(s)

CAROLINE MUNOZ
<br>Commission # 1824796
<br>Notary Public - California
<br>Los Angeles County
<br>My Comm. Expires Nov 25, 2012

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature ___Caroline Munoz___
<br>Signature of Notary Public

Place Notary Seal Above

---------- **OPTIONAL** ----------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: __The Gray Casualty & Surety Company - General Indemnity Agreement__

Document Date: __November 30, 2011__ Number of Pages: __9__

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: __Robert C. Armijo__
<br>☒ Individual
<br>☒ Corporate Officer — Title(s): __President__
<br>☐ Partner — ☐ Limited ☐ General
<br>☐ Attorney in Fact
<br>☒ Trustee
<br>☐ Guardian or Conservator
<br>☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
<br>Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
<br>☐ Individual
<br>☐ Corporate Officer — Title(s): _____
<br>☐ Partner — ☐ Limited ☐ General
<br>☐ Attorney in Fact
<br>☐ Trustee
<br>☐ Guardian or Conservator
<br>☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
<br>Top of thumb here

Signer Is Representing: _____

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827